**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

   Plaintiff,

vs.                  No. CR 21-0306 JB

DASHAE HAMPTON,

   Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Petition for Revocation of Supervised Release, filed November 26, 2025 (Doc. 98)("Petition for Revocation"). The Court holds an evidentiary hearing on May 6, 2026. See Clerk's Minutes at 1, filed May 6, 2026 (Doc. 115); Draft Hearing Transcript of Proceedings at 1 (taken May 6, 2025)(Court)("May 6, Tr.").[1] The primary issues are: (i) whether the Court will consider the police officer, Beatrice Loving's, lapel footage ("Loving's Lapel Footage"), and Criminal Complaint, filed November 26, 2025 (Doc. 98-1)("Sworn Criminal Complaint"), from the incident in which Defendant Dashae Hampton allegedly makes physical contact with his fiancée, Alisha Kenney; (ii) whether Hampton commits battery on a household member, N.M.S.A. 1978, § 30-3-15, and therefore violates his conditions of release, when he engages in a physical altercation with Kenney; (iii) whether Hampton commits interference with communications, N.M.S.A. 1978, § 30-12-1, and therefore violates his conditions of release, when he takes Kenney's telephone; (iv) whether Hampton commits deprivation of property, N.M.S.A. 1978, § 30-3-18, and therefore violates his conditions of release, when he takes Kenney's telephone; and (v) whether Hampton commits child abuse, N.M.S.A.

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

1978, § 30-6-1, and therefore violates his conditions of release, when he engages in a physical altercation with Kenney in front of children.  The Court concludes that: (i) it not will consider Loving's lapel footage nor the Sworn Criminal Complaint, because the United States offers no reason for not presenting Kenney and Loving for cross-examination; (ii)  the United States does not prove, by a preponderance of the evidence, that Hampton commits battery on a household member, because Hampton acts in self-defense; (iii) the United States does not prove, by a preponderance of the evidence, that Hampton commits interference with communications, because Hampton does not take Kenney's telephone; (iv) the United States does not prove, by a preponderance of the evidence, that Hampton commits deprivation of property, because, again, Hampton does not take Kenney's telephone; and (v) the United States does not prove, by a preponderance of the evidence, that Hampton commits cruelty to children, because Kenney starts the physical altercation with Hampton.  The Court therefore denies the Petition for Revocation.

**FACTUAL BACKGROUND**

In the Factual Background, the Court: (i) discusses Hampton's original crime of Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924; (ii) discusses Hampton's judgment and supervised release conditions; and (iii) discusses the incident that occurred on October 30, 2025, between Hampton and Kenney.  At the sentencing, in 2022, Hampton does not dispute the facts in the Presentence Report, filed April 8, 2022 (Doc. 68)("PSR").[2]  See Defendants' Sentencing Memorandum, Objections, and Request for Variance

---

[2] The Sole Objection made in Defendant's Sentencing Memorandum, Objections, and Request for Variance, filed June 27, 2022 (Doc. 74)("Objections"), is to Hampton's base offense level.  Objections at 2.  Hampton makes a policy argument that although he "possessed a partially loaded 16+1 round magazine," which is a semiautomatic firearm, the Court should not consider this for sentencing purposes, because "the 15-round cutoff is an arbitrary number not based on empirical data or national experience."  Memorandum Opinion and Order at 17, filed September 2, 2022 (Doc. 81).

at 1, filed June 27, 2022 (Doc. 74)("Objections").  The Court therefore uses facts in the PSR as its findings of fact.  See Federal R. Crim. P. 32(i)(3)(A) ("[The court] may accept any undisputed portion of the presentence report as a finding of fact.").  The Court also uses the evidence from the revocation hearing held on May 6, 2026, for its findings of fact.  See Clerk's Minutes at 1; May 6, Tr.

### 1.      The Original Crime.

1.      On December 13, 2020, Albuquerque Police Department officers are on patrol in Albuquerque, New Mexico, when they pass a vehicle sitting in a parking lot.  See PSR ¶ 7, at 5.

2.      After running a query on the vehicle's license plate, officers learn the plate is registered to a different vehicle.  See PSR ¶ 7, at 5.

3.      As officers approach the vehicle, they observe a male, Hampton, sleeping in the driver's seat with a firearm sitting on his lap.  See PSR ¶ 7, at 5.

4.      Officers observe Hampton wake up and move inside his vehicle as if he is attempting to hide something.  See PSR ¶ 7, at 5.

5.      A short time later, Hampton exits the vehicle, and the officers detain Hampton.  See PSR ¶ 7, at 5.

6.      Hampton acknowledges that he is a convicted felon, which officers confirm; therefore, he may not possess a firearm.  See PSR ¶ 8, at 5.

7.      On December 28, 2020, agents execute a search warrant on Hampton's vehicle and locate a loaded Smith & Wesson, model SD9, 9mm semiautomatic pistol (serial number FCK7878) with a magazine capable of accepting sixteen rounds of ammunition.  See PSR ¶ 9, at 5.

8.      Officers confirm that Hampton is the person on the vehicle's registration and they locate several items identifying Hampton as the vehicle's owner.  See PSR ¶ 9, at 5.

9.    As a result of this incident, the United States charges Hampton with Felon in Possession of a Firearm.  See PSR ¶ 1, at 4.

10.    On February 1, 2022, Hampton pleads guilty to Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1) and of 18 U.S.C. § 924.  See PSR ¶ 2, at 4.

**2.    Supervised Release.**

11.    Upon release from imprisonment, Hampton begins a three-year term of supervised release.  See Judgment in a Criminal Case at 3, filed December 27, 2022 (Doc. 87)("Judgment").

12.    A mandatory condition of supervision for Hampton is that he "must not commit another federal, state, or local crime."  Judgment at 3.

**3.    The October 30, 2025, Incident.**

13.    On October 30, 2025, Hampton is hosting a birthday party for Kenney.  See May 6, Tr. at 28:8-10 (Johnson).[3]

14.    Hampton's friend, Ervin Johnson, attends Kenney's birthday party.  See May 6, Tr. at 28:1-10 (Johnson).[4]

15.    Kenney becomes agitated, because she misses her hair appointment earlier in the day.  See May 6, Tr. at 28:13-17 (Johnson).[5]

---

[3] During the May 6, 2026, hearing, Hampton calls Johnson to the stand who states that he is at the apartment for Kenney's birthday.  See May 6, Tr. at 28:8-10 (Johnson).  The United States does not dispute that the reason for the gathering is Kenney's birthday.  Accordingly, the Court accepts as true Johnson's undisputed statement of fact.

[4] Johnson states that he attends Kenney's birthday party.  See May 6, Tr. at 28:1-10 (Johnson).  The United States does not dispute that Johnson attends Kenney's birthday party.  Accordingly, the Court accepts as true Johnson's undisputed statement of fact.

[5] Johnson states that Kenney becomes agitated after missing her hair appointment.  See May 6, Tr. at 28:13-17 (Johnson).  The United States does not dispute that Kenney is upset because she misses her hair appointment.  Accordingly, the Court accepts as true Johnson's undisputed statement of fact.

16.     Hampton is holding one of his children and another one of his children is standing next to him; all three individuals are in close proximity to Johnson.  See May 6, Tr. at 31:2-10 (Johnson).[6]

17.     Kenney approaches Hampton and hits him several times with a closed fist.  See May 6, Tr. at 31:12-20 (Johnson).[7]

18.     Hampton begins hugging Kenney to get her to stop hitting him and then pushes her back.  See May 6, Tr. at 32:1-5 (Johnson).[8]

---

[6] Johnson states Hampton is holding one child while another stands at his leg near Johnson. See May 6, Tr. at 31:2-10 (Johnson).  The United States does not dispute that Hampton is with his children near Johnson.  Accordingly, the Court accepts as true Johnson's statement of undisputed fact.

[7] There is a factual dispute over who struck first.  Johnson contends that Kenney hit Hampton first because she is upset about missing her hair appointment.  See May 6, Tr. at 31:12-20 (Johnson).  Kenney states that Hampton struck her and that she never hit Hampton.  See Sworn Criminal Complaint at 1; Loving's Lapel Footage at 4:44-10:00.  The Court does not consider Loving's Lapel Footage nor the Sworn Criminal Complaint.  The lapel-camera footage consists of an officer's interview with Kenney following the October 30, 2025, incident, while the statements in the Sworn Criminal Complaint describe the same incident.  Both Kenney's statements in the video and the Sworn Criminal Complaint are hearsay not subject to any exceptions.  The United States offers no explanation for not presenting Kenney or Officer Loving as live witnesses subject to cross-examination.  The United States therefore has not shown "good cause" for not presenting Kenney or Loving as live witnesses subject to cross-examination.  United States v. Jones, 818 F.3d at 1100.  Accordingly, the only evidence that the Court may consider indicates that Kenney struck Hampton first.  The Court therefore finds that Kenney struck Hampton first.

[8] There is a factual dispute over whether Hampton strikes Kenney.  Johnson states that Hampton's response to Kenney striking him is hugging her and pushing her away.  See May 6, Tr. at 32:1-5 (Johnson).  Kenney states that Hampton struck her and that she never hit Hampton.  See Sworn Criminal Complaint at 1; Loving's Lapel Footage at 4:44-10:00.  The Court does not consider Loving's Lapel Footage nor the Sworn Criminal Complaint.  The lapel-camera footage consists of an officer's interview with Kenney following the October 30, 2025, incident, while the statements in the Sworn Criminal Complaint describe the same incident.  Both Kenney's statements in the video and the Sworn Criminal Complaint are hearsay not subject to any exceptions.  The United States offers no explanation for not presenting Kenney or Officer Loving as live witnesses subject to cross-examination.  The United States therefore has not shown "good cause" for not presenting Kenney or Loving as live witnesses subject to cross-examination.  United States v. Jones, 818 F.3d at 1100.  Accordingly, the only evidence that the Court may consider

19.     Both Hampton and Kenney trip over the nearby children and fall to the ground.  <u>See</u> May 6, Tr. at 32:6-10 (Johnson).[9]

20.     Kenney gets off the floor and calls the police.  <u>See</u> May 6, Tr. at 37:20-25 (Johnson).[10]

---

indicates that Hampton, in response to Kenney striking him, hugs her and then pushes her away. The Court therefore finds that Hampton hugs Kenney and then pushes her away.

[9] There is a factual dispute over whether Hampton strikes Kenney on the ground.  Johnson states that both Hampton and Kenney trip over the nearby children and fall to the ground before getting up without further incident.  <u>See</u> May 6, Tr. at 32:6-10 (Johnson).  Kenney states that Hampton pushes her to the ground and then begins hitting her while she is on the ground.  <u>See</u> Sworn Criminal Complaint at 1; Loving's Lapel Footage at 4:44-10:00.  The Court does not consider Loving's Lapel Footage nor the Sworn Criminal Complaint.  The lapel-camera footage consists of an officer's interview with Kenney following the October 30, 2025, incident, while the statements in the Sworn Criminal Complaint describe the same incident.  Both Kenney's statements in the video and the Sworn Criminal Complaint are hearsay not subject to any exceptions.  The United States offers no explanation for not presenting Kenney or Officer Loving as live witnesses subject to cross-examination.  The United States therefore has not shown "good cause" for not presenting Kenney or Loving as live witnesses subject to cross-examination.  <u>United States v. Jones</u>, 818 F.3d at 1100.  Accordingly, the only evidence the Court may consider indicates that Hampton and Kenney fall to the ground and get up without incident.  The Court therefore finds that Hampton falls to the ground and gets up without incident.

[10] Johnson states that Kenney gets off the floor and calls the police.  <u>See</u> May 6, Tr. at 37:20-25 (Johnson).  The United States does not dispute that Kenney calls the police.  Accordingly, the Court accepts as true Johnson's undisputed fact.

21.    Hampton leaves the scene. See May 6, Tr. at 38:21-25 (Johnson).[11] [12]

**PROCEDURAL BACKGROUND**

---

[11] There is a factual dispute over whether Hampton leaves the scene with only his personal property. Johnson states that Hampton leaves the scene without any of Kenney's property. See May 6, Tr. at 38:2-25 (Johnson). Kenney states that Hampton leaves the scene with her telephone and electronic devices to prevent her from again calling the police. See Sworn Criminal Complaint at 1; Loving's Lapel Footage at 4:44-10:00. The Court does not consider Loving's Lapel Footage nor the Sworn Criminal Complaint. The lapel-camera footage consists of an officer's interview with Kenney following the October 30, 2025, incident, while the statements in the Sworn Criminal Complaint describe the same incident. Both Kenney's statements in the video and the Sworn Criminal Complaint are hearsay not subject to any exceptions. The United States offers no explanation for not presenting Kenney or Officer Loving as live witnesses subject to cross-examination. The United States therefore has not shown "good cause" for not presenting Kenney or Loving as live witnesses subject to cross-examination. United States v. Jones, 818 F.3d at 1100. Accordingly, the only evidence the Court may consider indicates that Hampton does not leave the scene with Kenney's telephone and electronic devices. The Court therefore finds that Hampton leaves the scene with only his personal property.

[12] As explained in greater detail in Section I, the Court may not consider Loving's Lapel Footage or the Sworn Criminal Complaint. Had the Court considered this evidence, however, it would conclude that Hampton violates his conditions of supervised release on October 30, 2025. Considering the record as a whole, the Court credits portions of Johnson's live testimony and portions of Kenney's statements captured on lapel footage. The Court would ultimately find that Kenney strikes Hampton first and that Hampton responds by pushing her to the ground, climbing on top of her, and striking her several times. See May 6, Tr. at 31:12-20 (Johnson); Loving's Lapel Footage at 4:44-10:00. The Court also would find that Hampton left the scene with Kenney's telephone to prevent her from contacting law enforcement again. See Loving's Lapel Footage at 4:44-10:00.

The Court would reach these findings by crediting some testimony and rejecting other testimony from both Johnson and Kenney. The Court would not credit Johnson's testimony that Hampton merely pushes Kenney away. See May 6, Tr. at 32:4-10 (Johnson). Kenney told the responding officer that Hampton climbs on top of her and repeatedly punches her, and she displays marks and bruises consistent with that account. See Loving's Lapel Footage at 4:44-10:00. The Court likewise would not credit Kenney's statement that she never struck Hampton, because she could not explain the injury to her hand when questioned by officers. See Loving's Lapel Footage at 4:44-10:00. On that point, the Court would credit Johnson's testimony that Kenney struck Hampton first. See May 6, Tr. at 31:12-20 (Johnson).

Accordingly, if the Court could consider all the evidence, it would adopt this account of events and find that Hampton violates the conditions of his supervised release. Because the Court may consider only Johnson's testimony, however, it concludes that the United States has not proven, by a preponderance of the evidence, a violation of supervised release.

On November 26, 2025, the USPO files the Petition for Revocation.  See Petition for Revocation at 1.  The USPO contends that Hampton violates the following condition of supervised release: "You must not commit another federal, state or local crime."  Petition for Revocation at 1. The USPO states:

> On November 3, 2025, the defendant was charged with Battery on a Household Member, Interference with Communications, Deprivation of the Property of a Household Member and Intentionally Causing or Permitting Cruelty to Children as to the Morals of Child to be Impaired in the Bernalillo Metropolitan Court, Case No.: T-4-DV-2025-003819.  The incident was alleged to have occurred on October 30, 2025, and involved the defendant's fiancée, Alisha Kenney, reporting she and the defendant were involved in a verbal altercation that turned physical with the police determining the defendant to be the primary aggressor.

Petition for Revocation at 1.  According to the USPO, the revocation range of imprisonment is five to eleven years.  See Petition for Revocation at 1.

## LAW REGARDING SUPERVISED RELEASE REVOCATION AND REVOCATION HEARINGS

Subsection (e)(3) of § 3583 permits courts to revoke supervised release on the conclusion, by a preponderance of the evidence, that the defendant violates a condition of probation.  See 18 U.S.C. § 3583(e).  Section 3583(e)(3) sets forth the process for revoking supervised release:

> **(e)** **Modification of conditions or revocation.** -- The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) --
>
> . . . .
>
> (3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5

> years in prison if the offense that resulted in the term of
> supervised release is a class A felony, more than three years
> in prison if such offense is a class B felony, more than 2
> years in prison if such offense is a class C or D felony, or
> more than one year in any other case . . . .

18 U.S.C. § 3583(e).  "Preponderance of the evidence" is "evidence sufficient to persuade you that

a fact is more likely present than not present."  Criminal Pattern Jury Instruction Committee of the

United States Court of Appeals for the Tenth Circuit, Criminal Pattern Jury Instructions § 1.05.1,

at 10 (2025 ed.)("Pattern Jury Instructions").  Preponderance of the evidence is:

> The greater weight of the evidence, not necessarily established by the
> greater number of witnesses testifying to a fact but by evidence that has the most
> convincing force; superior evidentiary weight that, though not sufficient to free the
> mind wholly from all reasonable doubt, is still sufficient to incline a fair and
> impartial mind to one side of the issue rather than the other..

"Preponderance of the Evidence," Black's Law Dictionary 18(c) (12th ed. 2024).

Where, as here, revocation of supervised release is contested, courts must hold a revocation

hearing.  See Fed. R. Crim. P. 32.1(b)(2).  Rule 32.1 of the Federal Rules of Criminal Procedure

governs revocation hearings.  See Fed. R. Crim. P. 32.1.  Rule 32.1 provides in relevant part:

> (2)  Revocation Hearing. Unless waived by the person, the court must hold the
> revocation hearing within a reasonable time in the district having
> jurisdiction. The person is entitled to:
>
>> (A)  written notice of the alleged violation;
>>
>> (B)  disclosure of the evidence against the person;
>>
>> (C)  an opportunity to appear, present evidence, and question any
>> adverse witness unless the court determines that the interest of
>> justice does not require the witness to appear;
>>
>> (D)  notice of the person's right to retain counsel or to request that
>> counsel be appointed if the person cannot obtain counsel; and
>>
>> (E)  an opportunity to make a statement and present any information in
>> mitigation . . . .

Fed. R. Crim. P. 32.1(b).

Although rule 32.1(b)(2) provides for a revocation hearing, the hearing is "not a formal trial." Comment to Rule 32.1(a)(2). Instead, revocation hearings are to be more flexible and inclusive than criminal trials. See Morrissey v. Brewer, 408 U.S. 471, 489 (1972).[13] The parties may call witnesses and present evidence, but the process "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." Morrissey v. Brewer, 408 U.S. at 489. To that end, the Federal Rules of Evidence do not apply in revocation hearings. See Fed. R. Evid. 1101(d)(3) ("These rules -- except for those on privilege -- do not apply to . . . miscellaneous proceedings such as . . . granting or revoking probation or supervised release . . . ."); United States v. Diaz, 986 F.3d 202, 209 (2d Cir. 2021).

Also, in service of flexibility and inclusivity, defendants have a lesser right to confrontation in revocation hearings. See Jones, 818 F.3d at 1098. "The Sixth Amendment is a trial right" and does not apply to revocation hearings. United States v. Hernandez, 778 F. Supp. 2d 1211, 1225 (D.N.M. 2011)(Browning, J.). Rule 32.1 of the Federal Rules of Criminal Procedure gives, however, the defendant at the revocation hearing "an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(c). Instead of running through a standard confrontation analysis like the one that the Supreme Court mandates in Crawford v. Washington, 541 U.S. 36 (2004)("Crawford"), courts presiding over revocation hearings engage in a balancing

---

[13]Rule 32.1 was adopted in 1979. See Advisory Committee Notes on Fed. R. Crim. P. 32.1. Rule 32.1 replaces the former "revocation of parole" system with a new "revocation of supervised release" system. Advisory Committee Notes on Fed. R. Crim. P. 32.1. The Supreme Court decides Morrissey v. Brewer in 1972, before rule 32.1's adoption. Accordingly, the Supreme Court's analysis concerns revocation of parole and not of revocation of supervised release. Nevertheless, the Tenth Circuit interprets Morrissey v. Brewer to apply to revocation of supervised release. See Jones, 818 F.3d at 1098-99 (discussing Morrissey v. Brewer as part of rule 32.1's history and development).

test, see Jones, 818 F.3d at 1099-100. When the United States relies on a non-testifying declarant's out-of-court statement in a revocation hearing, the court "must determine whether the 'interest of justice does not require the witness to appear' by balancing (1) 'the person's interest in the constitutionally guaranteed right to confrontation' against (2) 'the government's good cause for denying it.'" Jones, 818 F.3d at 1099-100 (quoting Advisory Committee Notes to the 2002 Amendment to Fed. R. Crim. P. 32.1). See Rule 32.1 Advisory Committee's Note to the 2012 Amendment (instructing courts to apply a balancing test that weighs "the person's interest in the constitutionally guaranteed right to confrontation against the government's good cause for denying it"); United States v. Hernandez, 428 F. Supp. 3d at 788 ("When applying the balancing test, the Court must weigh the defendant's interest in cross-examining and confronting [a] witness with the government's good cause for not presenting the witness." (citing Jones, 818 F.3d at 1098)). The testimony's "reliability is a very important factor in determining the strength of a releasee's confrontation right.'" Jones, 818 F.3d at 1100 (quoting Curtis v. Chester, 626 F.3d 540, 546 (10th Cir. 2010)(emphasis omitted in Jones, but in Curtis v. Chester)). The Tenth Circuit uses adopted this balancing test "when determining a releasee's confrontation rights at a revocation hearing." Jones, 818 F.3d at 1099. See, e.g., United States v. Hykes, 653 F. Supp. 3d 913, 917 (D.N.M. 2022)(Browning, J.)(making findings of fact in a revocation of supervised release memorandum opinion and order based on evidence that survives the balancing test that the Tenth Circuit adopts in Jones, 818 F.3d at 1098); United States v. Calvert-Cata, No. CR 16-4566 JB, 2022 U.S. Dist. LEXIS 194756, at *30-31 (D.N.M. October 26, 2022)(Browning, J.)(determining in the alternative that, even if it must apply the Jones, 818 F.3d at 1098, balancing test to the victim's out-of-court statements, the statements are admissible, because the United States has good cause not to call the witness to testify at the revocation hearing).

- 11 -

Although rule 32.1 and the Jones balancing test are geared toward decreasing procedural protections for defendants in revocation hearings and increasing the universe of evidence courts can consider in those hearings, in practice, rule 32.1 and Jones may limit evidence unnecessarily and unwisely.  In some instances, rule 32.1 compels courts presiding over revocation hearings to disregard out-of-court statements even though those same out-of-court statements are admissible under the Federal Rules of Evidence and Crawford if offered at trial, regardless whether the declarant is available to testify at the trial.[14]  Those instances are troubling for two reasons.  First, defendants in those cases receive a greater right to confrontation in the revocation context than they do in the trial context.  It is difficult -- if not impossible -- to square that outcome with the Tenth Circuit's guidance that defendants are supposed to have a more limited right to confrontation in the revocation setting than they do in the trial setting.  See Jones, 818 F.3d at 1098.  Second, courts in revocations must rely on smaller universes of evidence than they do in the trial setting.  Again, it is difficult -- if not impossible -- to reconcile that result with the Supreme Court's guidance in Morrissey v. Brewer that courts presiding over revocation hearings should be able to consider "material that would not be admissible in an adversary criminal trial."  408 U.S. at 489.

---

[14]The Court confronts a similar issue in United States v. Hernandez, 428 F. Supp. 3d 775.  There, an officer responds to a domestic disturbance in Rio Rancho, New Mexico.  See 428 F. Supp. 3d at 782.  When the officer arrives at the scene, the victim "appeared distressed," and tells the officer that, among other things, the defendant assaulted her and attempted to set fire to a kitchen.  428 F. Supp. 3d at 782.  The defendant is on supervised release at the time, and the USPO's probation officer subsequently petitions to revoke his supervised release.  See 428 F. Supp. 3d at 780.  At the hearing, the United States does not call the victim, but relies on her statements to the officer on the scene.  See 428 F. Supp. 3d at 781.  The Court applies the Jones balancing test and determines that it cannot consider the victim's out-of-court statements to the officer.  See 428 F. Supp. 3d at 788.  Those out-of-court statements, however, are admissible hearsay in a trial setting as either a present sense impression or excited utterance.  See Fed. R. Evid. 803(1), (2).  Given the Court's recent decisions in United States v. Chavez, No. CR 15-3557 JB, 2023 WL 5672594 (D.N.M. Sept. 1, 2023)(Browning, J.), and United States v. Green, No. CR 06-2605 JB, 2022 WL 1184650 (D.N.M. April 21, 2022)(Browning, J.), aff'd, No. 22-2062, 2023 WL 4195884 (10th Cir. June 27, 2023), the Court would admit these out-of-court statements today.

The Honorable Andrew S. Oldham, United States Circuit Judge for the United States Court of Appeals for the Fifth Circuit, documents this paradox in his concurring opinion in United States v. Alvear, 959 F.3d 185, 191 (5th Cir. 2020)(Oldham, J., concurring).  In his concurrence, Judge Oldham discusses "three oddities" in rule 32.1 caselaw.  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).[15]  First, he notes that "it's unclear what if anything the Due Process Clause adds to the protections of Rule 32.1(b)(2)(C)."  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).  Second, he observes that, "instead of applying Rule 32.1(b)(2)(C), many of our decisions in this area contain nary a citation to it."  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring).  Finally, he describes, "oddest of all, sometimes confrontation rights in a revocation hearing can be broader than the confrontation right at trial."  United States v. Alvear, 959 F.3d at 193 (Oldham, J., concurring)(emphasis in original).

> The Supreme Court has told us that protections in a revocation hearing are (at most) the same as those at trial.  See United States v. Haymond, -- U.S. --, 139 S.Ct. 2369, 2378-79 . . . (2019)(plurality opinion); id. at 2385-86 (Breyer, J., concurring in the judgment).  That result creates its own difficulties.  See id. at 2390-91 (Alito, J., dissenting).  But it's an altogether different problem to make the constitutional protections in the revocation hearing broader than at trial.  After all, one premise of our system is that post-conviction rights are generally narrower because "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."  Herrera v. Collins, 506 U.S. 390, 399 . . . (1993).  But when we ask different questions under the Confrontation Clause at trial (is the statement "testimonial"?) and under the Due Process Clause at revocation (is there "good cause" to admit the statement?), we can get incongruous answers.

---

[15]The Fifth Circuit does not use the Jones test.  It uses, however, a balancing test analogous to Jones test, as does every other Court of Appeals that has handled a rule 32.1 issue.  See United States v. Taveras, 380 F.3d 532, 536 (1st Cir. 2004); United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000); United States v. Lloyd, 566 F.3d 341, 344 (3d Cir. 2009); United States v. Doswell, 670 F.3d 526, 530 (4th Cir. 2012); Barnes v. Johnson, 184 F.3d 451, 454 (5th Cir. 1999); United States v. Jackson, 422 Fed. App'x 408, 410-11 (6th Cir. 2011)(unpublished); United States v. Jordan, 742 F.3d 276, 279 (7th Cir. 2014); United States v. Bell, 785 F.2d 640, 642 (8th Cir. 1986); United States v. Comito, 177 F.3d 1166, 1170 (9th Cir. 1999); United States v. Frazier, 26 F.3d 110, 114 (11th Cir. 1994); United States v. Stanfield, 360 F.3d 1346, 1360 (D.C. Cir. 2004).

Consider an example. A boyfriend violently attacks his girlfriend who then immediately calls 911. The Government wants to use her statements to the 911 operator against the boyfriend. At trial, the defendant has no right to prevent the introduction of these statements under the Confrontation Clause because they're not "testimonial." [Ohio v. ]Clark, [576 U.S. 237 (2015)] (citing Davis v. Washington, 547 U.S. 813, 820 . . . (2006)). But this same 911 call is almost certainly hearsay. So at the boyfriend's revocation hearing, he can object to the introduction of the statements under the Due Process Clause, unless there is "good cause" to admit them. See, e.g., [United States v. ]Jimison, 825 F.3d [260,] 263 [(2016)].

The oddities don't end there. The Federal Rules of Evidence apply at trial. And they provide for the admission of all sorts of hearsay: an excited utterance, a statement made for medical treatment, a present sense impression, a business record, a statement against interest. See Fed. R. Evid. 803, 804. But the hearsay rules in the Federal Rules of Evidence do not apply in revocation hearings. Fed. R. Evid. 1101(d)(3) . . . . So if the Government wants to use these same (otherwise-admissible) hearsay statements at a revocation hearing, the court has to apply the "good cause" analysis demanded by the Due Process Clause. That's an additional hurdle that applies post-conviction that does not apply pre-conviction. How odd.

United States v. Alvear, 959 F.3d at 194 (Oldham, J., concurring).

Although 18 U.S.C. § 3583(e) establishes the maximum terms of imprisonment upon the revocation of a defendant's supervised release, the U.S.S.G establishes revocation imprisonment ranges based on the defendant's criminal history category and the violation grade. U.S.S.G. § 7B1.4(a). The Guidelines establish three violation categories:

(1)    GRADE A VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm or destructive device of a type described in 26 U.S.C. § 5845(a); or (B) any other federal, state, or local offense punishable by a term of imprisonment exceeding twenty years;

(2)    GRADE B VIOLATIONS -- conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year;

(3)    GRADE C VIOLATIONS -- conduct constituting (A) a federal, state, or local offense punishable by a term of imprisonment of one year or less; or (B) a violation of any other condition of supervision.

U.S.S.G. § 7B1.2(a).  In determining the applicable revocation imprisonment range, the Guidelines instruct that courts should apply the criminal history category applicable at the time of the defendant's underlying sentencing.  See U.S.S.G. § 7B1.4 cmt. n.1.

## ANALYSIS

The Court denies the Petition for Revocation.  First, the Court will not consider Loving's Lapel Footage nor the Sworn Criminal Complaint, because the United States offers no reason for not presenting Kenney or Loving for cross-examination.  Second, the United States does not prove, by a preponderance of the evidence, that Hampton commits battery on a household member, because Hampton acts in self-defense.  Third, the United States does not prove, by a preponderance of the evidence, that Hampton commits interference with communications, because Hampton does not take Kenney's telephone.  Fourth, the United States does not prove, by a preponderance of the evidence, that Hampton commits deprivation of property, because, again, Hampton does not take Kenney's telephone.  Fifth, the United States does not prove, by a preponderance of the evidence, that Hampton commits child abuse, because Kenney starts the physical altercation with Hampton.

I.    **THE COURT WILL NOT CONSIDER THE POLICE OFFICER'S LAPEL FOOTAGE NOR THE SWORN CRIMINAL COMPLAINT.**

The Court will not consider Loving's Lapel Footage nor the Sworn Criminal Complaint. The threshold issue in determining whether the Court can consider evidence at a revocation hearing is whether the evidence is admissible at trial.  See United States v. Calvert-Cata, 2022 WL 14813473, at *12 (D.N.M. Oct. 26, 2022)(Browning, J.)(holding, in a revocation context, that the Court may rely on out-of-court statements that are admissible under the Federal Rules of Evidence).  Only after determining that a statement is inadmissible at trial should the Court apply the balancing test in United States v. Jones.  This sequence makes sense, because, as the Tenth Circuit explains, defendants possess a more limited right to confrontation in the revocation setting

- 15 -

than they do in the trial setting.  See Jones, 818 F.3d at 1098.  Given this background, it would make little sense for evidence to be admissible at trial but nevertheless unavailable for consideration in a revocation hearing.

Here, the statements upon which the United States relies in both the lapel footage and the Sworn Criminal Complaint are hearsay.  Hearsay is an out-of-court statement "offered to prove the truth of the matter asserted."  United States v. Brinson, 772 F.3d 1314, 1322 (10th Cir. 2014).  The lapel footage depicts Kenney describing the October 30, 2025, incident to Loving.  See Loving's Lapel Footage at 4:44-10:00.  The United States seeks to use Kenney's statements on the video to prove what occurs on October 30, 2025.  Kenney's statements, when used for that purpose, are therefore hearsay.  See United States v. Stapp, 2025 WL 1113927, at *4 (10th Cir. 2025)(holding that statements made on body camera footage is hearsay when the declarant does not make the statement while testifying at the current hearing and the statement is offered to prove the truth of the matter asserted).  The Sworn Criminal Complaint likewise describes the incident between Hampton and Kenney on October 30, 2025.  See Sworn Criminal Complaint at 1.  The United States similarly seeks to use the Sworn Criminal Complaint to prove what occurs on October 30, 2025.  The Sworn Criminal Complaint is therefore hearsay when used for that purpose. Accordingly, the statements in the lapel footage and the Sworn Criminal Complaint are admissible only if they satisfy an exception to the hearsay rule.

The Court does not identify any hearsay exception that renders these statements admissible. Likewise, the United States does not argue that these statements fit within any recognized exception.  The closest possible exceptions are either present sense impression or excited utterance. A statement qualifies as a present sense impression if: (i) the statement describes or explains the event perceived; (ii) the declarant has in fact perceived the event described; and (iii) the description is substantially contemporaneous with the event in question.  See United States v. Calvert-Cata,

2022 WL 14813473, at *13.  A statement qualifies as an excited utterance if the statement relates to a startling even or condition, and if the declarant makes the statement while the declarant is under the stress of excitement that is caused.  See Fed. R. Evid. 803(2).  These statements fail both exceptions for the same reason: Loving does not encounter Kenney until roughly an hour after Hampton leaves the apartment.  Several facts support the Court's conclusion.  First, the Sworn Criminal Complaint reflects that officers are dispatched to the wrong address, which delays their response.  See Sworn Criminal Complaint at 1.  Second, at the beginning of the lapel footage, officers are seen searching other apartments because they have been provided the incorrect address.  See Kenney Lapel Footage at 0:00-10:00.  Third, Hampton notes that roughly an hour elapses between the incident call time and the officers' arrival at the scene.  See May 6, Tr. at 45:5-17 (Snyder).  That lapse of time does not square with the present sense impression requirement that the statement be substantially contemporaneous with the event, nor with the excited utterance requirement that the declarant still be under the stress of excitement caused by the event.  Moreover, these statements do not fall under an excited utterance, because this amount of time gives Kenney an opportunity to reflect and collect herself which the lapel footage reflects.  See Loving's Lapel Footage at 0:00-10:00.  The Court therefore concludes that these statements are not admissible at trial.

When the Court must analyze whether to consider a statement that is not be admissible at trial, it must use the Tenth Circuit's test in United States v. Jones.  Rule 32.1(b)(2)(c) of the Federal Rules of Criminal Procedure requires the Court to apply a balancing test to determine whether it may consider hearsay evidence for revocation purposes.  See Fed. R. Crim. P. 32(1)(b)(2)(C); United States v. Jones, 818 F.3d at 1098.  Under the balancing test, the Court must weigh "the person's interest in the constitutionally guaranteed right to confrontation" against "the government's good cause for denying it."  United States v. Jones, 818 F.3d at 1100.  The Tenth

- 17 -

Circuit further notes that "reliability is a very important factor in determining the strength of a releasee's confrontation right." United States v. Jones, 808 F.3d at 1100.

First, like any defendant, Hampton has an interest in confronting individuals testifying against him. See United States v. Jones, 818 F.3d at 1101. Several textbook bases for cross-examination are present here: (i) asking Kenney why the statements in the lapel footage contradict Johnson's live testimony; (ii) inquiring further into why Kenney could not explain the injury to her hand; (iii) exploring any possible bias she may hold against Hampton; (iv) examining whether Kenney has prior convictions that affect her credibility. Moreover, "generally recognized concerns with eyewitness testimony" strengthen Hampton's interest in confronting Kenney. United States v. Jones, 818 F.3d at 1101. Second, Hampton also has an interest in confronting Loving, who drafts the Sworn Criminal Complaint. This interest is strong, because statements in the Sworn Criminal Complaint -- regarding Kenney's ability to call the police -- contradict Johnson's testimony. See Sworn Criminal Complaint at 1; May 6, Tr. at 38:21-25. The general reliability associated with police officers responding to scenes and documenting incidents in criminal complaints undercuts this interest. Accordingly, Hampton has an interest in confronting Kenney and the officer who drafts the Sworn Criminal Complaint.

The United States does not demonstrate good cause for not presenting Kenney and Loving, the officer who drafts the Sworn Criminal Complaint. The United States offers no explanation for either witnesses' absence. In United States v. Jones, the Tenth Circuit concludes that the United States does not demonstrate good cause where the United States argues that the witness fears retaliation, because she is the only witness to a gang-related shooting and refuses to cooperate with the State. 818 F.3d at 1091. The Tenth Circuit rejects that argument, because the United States does not ask the witness to attend the revocation hearing and instead invites the court to infer that she would refuse to testify. See 818 F.3d at 1091. Here, the United States' efforts are similarly

- 18 -

deficient.  The United States does not offer an insufficient explanation; it offers no explanation.  It does not contend that the witnesses are unavailable, unwilling to testify, outside the subpoena power, or otherwise unable to appear.  Nor does it identify any logistical, safety, or practical concern that prevents their testimony.  The record instead reflects a failure to attempt to justify denying Hampton the opportunity to confront the witnesses against him.  See United States v. Hernandez, 428 F. Supp.3d at 789 (holding that the United States does not demonstrate good cause when they offer no reason for the witness' absence).  On balance, the Court concludes that Hampton's interest in confronting Kenney and Loving outweighs the United States' nonexistent showing of good cause for their absence.

The Court does not reach this conclusion lightly.  The Court acknowledges that defendants possess a more limited right to confrontation in the revocation setting than they do in the trial setting.  See Jones, 818 F.3d at 1098.  Nevertheless, the Court must follow the test established in United States v. Jones and therefore will not consider the lapel footage nor the Sworn Criminal Complaint.[16]

---

[16] The Court is very troubled by its conclusion that it cannot consider, under Tenth Circuit law, the lapel footage and Sworn Criminal Complaint.  The Supreme Court says that a revocation hearing "should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial."  Morrissey v. Brewer, 408 U.S. at 489.  The Tenth Circuit makes it difficult, if not impossible, for a court to consider "letters, affidavits, and other material . . . ."  Morrissey v. Brewer, 408 U.S. at 489.  The Tenth Circuit requires that the United States explain why it is not calling certain witnesses rather than using the letters, affidavits, or other materials.  See United States v. Jones, 808 F.3d at 1100.  There are at least eight major problems with the Tenth Circuit's requirement.

First, the Tenth Circuit's requirement that the United States must state why it is not calling a witness is not in rule 32.1 or in the Supreme Court's opinion.  The Supreme Court states that a defendant has "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."  Morrissey v. Brewer, 408 U.S. at 489.  This language gives the judge, in his or her discretion, the power to find good cause based on the totality of the circumstances.  It does not place the burden on the United States to show good cause as the Tenth Circuit holds in United States v. Jones.  The Court would encourage the Tenth Circuit to drop this requirement.  It is eliminating the flexibility that the Supreme Court and the rule envision.

Second, the Court cannot think of another situation where the law requires the United States to explain why it is not calling a witness. The law does not require the United States to explore why it is not calling a witness at trial, at suppression hearings, at sentencing, at detention hearings, or at any other hearing. If the law wants revocation hearings to be more flexible than a trial, the law should not add a requirement that the law does not require at trial or at any other hearing.

Third, it is hard to think what a good excuse for not calling a witness is. According to the Tenth Circuit, the United States perception of a witness' fear is not a good excuse. See United States v. Jones, 818 F.3d at 1091. Here, that Kenney has likely changed her story probably is not a good excuse. The excuse that there is a pending state case, and the United States does not want the victim to testify in federal court and give the defendant free discovery for the criminal case probably is not a good excuse. The Court cannot think of a good excuse, so the witness just has to testify. The excuse rule effectively says, do not give us letters, affidavits, or other materials, give us only witnesses.

Fourth, a common scenario for revocations is the defendant beating up his girlfriend or wife. The woman often recants her allegations. These domestic violence cases are difficult for the United States and/or the State to prosecute. The Court should be able to consider what evidence it has closest in time to the incident. To ignore the evidence closest in time to the incident and prefer live testimony makes it difficult, if not impossible, to prosecute domestic violence cases and revocation violations.

The Court thinks it should be able to consider the lapel video and the Sworn Criminal Complaint. When the Court considers this evidence, it finds there is a violation. See supra note 3. When the Court concludes that it cannot consider the lapel video and the Sworn Criminal Complaint, the Court finds no violation. Here, the Tenth Circuit's rule has consequences. The Court thinks it should be able to study the video and the Sworn Criminal Complaint and make its own decision by a preponderance of the evidence.

Fifth, the Confrontation Clause does not apply to revocation proceedings. See Curtis v. Chester, 626 F.3d 540, 544 (10th Cir. 2010). The Tenth Circuit's excuse rule, however, brings some confrontation rights back into the picture. If the Confrontation Clause does not apply, the Tenth Circuit should not require confrontation by some other name.

Sixth, it does not seem onerous or unfair to place the burden on Hampton to subpoena Kenney or Loving. If he wants to get her recantation, he can get it in some form or fashion. It is not clear why the burden should fall on the United States to supply all of the evidence at the revocation.

Seventh, the courts should not lose track of the goal of supervised release. Even detention is not punitive. It is to try to deter the defendant from violating court orders and conditions. Creating unnecessarily high standards for evidence makes the Court's supervision of the defendant coming out of prison more difficult.

Eighth, the defendant committing new crimes while on supervised release is about the worst violation a defendant can commit. The Tenth Circuit's rules have made it much less onerous to prove a failed drug test or failure to complete a residential detox program -- all of which can put a defendant into detention -- than a new crime violation. That lack of flexibility for the most serious revocation violations seems odd.

The Court does not like having to supervise criminal defendants when they come out of prison. Supervision of defendants coming out of prison is not a core judicial function. The Corrections Department does this supervision in many States, including in New Mexico. But Congress has given this task to the federal judiciary, and the Court must carry out the task faithfully

- 20 -

II.   **THE UNITED STATES DOES NOT PROVE, BY A PREPONDERANCE OF THE EVIDENCE, THAT HAMPTON COMMITS BATTERY ON A HOUSEHOLD MEMBER.**

The Petition for Revocation first alleges that Hampton violates his conditions of supervised release by committing battery on a household member, N.M.S.A. 1978, § 30-3-15.  See Petition for Revocation at 1.  Battery on a household member "consists of the unlawful, intentional touching or application of force to the person of a household member, when done in a rude, insolent or angry manner."  N.M.S.A. 1978, § 30-3-15.  A "household member" means a "spouse, former spouse . . . or a person with whom a person has had a continuing personal relationship."  N.M.S.A 1978, § 30-3-11.  "Continuing personal relationship" means dating or intimate relationship. N.M.S.A. 1978, § 30-3-11.  Moreover, a defendant acts in self defense if: (i) there is an appearance of immediate danger of bodily harm to the defendant as a result of the unlawful act; (ii) the defendant is in fact put in fear of immediate bodily harm and acts because of that fear; (iii) the defendant uses an amount of force that the defendant believes is reasonable and necessary to prevent the bodily harm; (iv) the defendant's force ordinarily would not create a substantial risk of death or great bodily harm; and (v) the apparent danger would have caused a reasonable person in the same circumstances to act as the defendant did.  See NMRA, Crim. UJI 14-5181.

Here, the altercation between Hampton and Kenney starts when Kenney approaches Hampton and strikes him several times with a closed fist.  See May 6, Tr. at 31:12-20 (Johnson); Findings of Fact ("FOF") ¶ 17, at 5.  In response, Hampton hugs Kenney to try to restrain her arms and then pushes her away from him.  See May 6, Tr. at 32:1-5 (Johnson); FOF ¶ 18, at 6.  Although Hampton trying to restrain Kenney's arms and pushing Kenney is an unlawful application of force,

---

and competently.  The Courts of Appeals should not make that task more difficult, however, with unnecessary rules.

Hampton's response to Kenney striking him falls within New Mexico's self-defense framework. First, there is an appearance of immediate danger of bodily harm, because Kenney strikes Hampton several times with a closed fist.  See May 6, Tr. at 31:12-20 (Johnson).  Second, Hampton is put in fear of immediate bodily harm and tries to restrain Kenney's arms because of that fear.  See May 6, Tr. at 32:1-5 (Johnson).  Third, based on the evidence that the Court can consider, Hampton hugging Kenney and then pushing her back is a reasonable amount of force necessary to prevent the bodily harm.  See May 6, Tr. at 32:1-5 (Johnson).  Fourth, hugging someone and pushing that person back does not create a substantial risk of death or great bodily harm.  Fifth, getting struck several times would have caused a reasonable person to act as Hampton does in trying to push Kenney back.  Because Hampton acts in self-defense, the United States does not prove, by a preponderance of the evidence, that Hampton violates his conditions of supervised release by committing battery on a household member.  The Court therefore denies the Petition for Revocation insofar as it relies on Hampton committing battery on a household member.

### III.   THE UNITED STATES DOES NOT PROVE, BY A PREPONDERANCE OF THE EVIDENCE, THAT HAMPTON COMMITS INTERFERENCE WITH COMMUNICATIONS.

The Petition for Revocation next alleges that Hampton violates his conditions of supervised release by committing interference with communications, N.M.S.A. 1978, § 30-12-1.  See Petition for Revocation at 1.  Interference with communications "consists of knowingly and without lawful authority . . . preventing, obstructing or delaying the sending transmitting, conveying or delivering in this state of any message, communication or report by or through telegraph or telephone."  N.M.S.A. 1978, § 30-12-1.  "Whoever commits interference with communications is guilty of a misdemeanor, unless such interference with communications is done under a court order as provided in Sections 30-12-2 through 30-12-11, NMSA 1978, or unless such interference with communications is done by an operator of a switchboard or an officer, employee or agent of any

communication common carrier in the normal course of activity which his employment while engaged in any is a necessary incident to the rendition of his services or to the protection of rights or property of the carrier of such communication." Arnold v. State, 1980-NMSC-030, 94 N.M. 381, 383 610 P.2d 1210, 1212 (1980).

The Court concludes that Hampton does not commit interference with communications, because after he pushes Kenney away from him, he leaves the scene with only his own personal property. See May 6, Tr. at 38:21-25 (Johnson); FOF ¶ 21, at 7. Kenney states, however, that Hampton leaves the scene with her telephone so that she cannot again call the police. See Loving's Lapel Footage at 4:44-10:00. As explained in Section I, the Court may not consider Kenney's Lapel Footage. Accordingly, based on the evidence the Court can consider, the Court concludes that the United States does not prove, by a preponderance of the evidence, that Hampton commits interference with communications. The Court therefore denies the Petition for Revocation insofar as it relies on Hampton committing interference with communications.

## IV.    THE UNITED STATES DOES NOT PROVE, BY A PREPONDERANCE OF THE EVIDENCE, THAT HAMPTON COMMITS DEPRIVATION OF PROPERTY.

The Petition for Revocation next alleges that Hampton violates his conditions of supervised release by committing deprivation of property, N.M.S.A. 1978, § 30-3-18. See Petition for Revocation at 1. Deprivation of property consists of: (i) the defendant intentionally deprives the victim of use of separate community or jointly owned personal property of the victim; (ii) the defendant intends to intimidate or threaten the victim; (iii) the victim is a household member of the defendant; and (iv) the incident happens in New Mexico. See NMRA, Crim. UJI 14-319.

Here, the Court concludes that Hampton does not commit deprivation of property, because Hampton leaves the scene with only his own personal property. See May 6, Tr. at 38:21-25 (Johnson); FOF ¶ 21, at 7. The Court arrives at this conclusion because the United States does not

prove element one by a preponderance of the evidence; Hampton does not deprive Kenney of the use of her property. Again, the Court acknowledges that Kenney states in the lapel video that Hampton leaves the scene with her telephone. See Loving's Lapel Footage at 4:44-10:00. The Court, however, is unable to consider this evidence and therefore concludes that the United States is unable to prove, by a preponderance of the evidence, that Hampton commits deprivation of property. The Court therefore denies the Petition for Revocation insofar as it relies on Hampton committing deprivation of property.

**V.      THE UNITED STATES DOES NOT PROVE, BY A PREPONDERANCE OF THE EVIDENCE, THAT HAMPTON COMMITS CHILD ABUSE.**

The Petition for Revocation next alleges that Hampton violates his conditions of supervised release by committing child abuse, N.M.S.A. 1978, § 30-6-1. See Petition for Revocation at 1. Abuse of a child "consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be . . . placed in a situation that may endanger the child's life or health." N.M.S.A. 1978, § 30-6-1. Whoever commits abuse of a child is guilty of a fourth-degree felony, unless the abuse results in the child's death or great bodily harm, in which case the defendant is guilty of a second-degree felony. See State v. Lucero, 1982-NMSC-069, 98 N.M. 204, 206, 647 P.2d 406, 408 (1982).

The Court concludes that Hampton does not commit child abuse, because Kenney starts the physical altercation and Hampton acts only in self-defense. To commit child abuse, the defendant must cause or permit a child to be placed in a situation that may endanger the child's health. See N.M.S.A. 1978, § 30-6-1. Here, Kenney is the one who places the children in harm's way by approaching Hampton and striking him with a closed fist several times while he is holding their child. See May 6, Tr. at 31:12-20 (Johnson); FOF ¶ 17, at 5. Kenney states in the lapel video that she does not strike Hampton but that instead, Hampton pushes her to the ground and strikes

her several times while he is on top of her.  See Loving's Lapel Footage at 4:44-10:00.  The Court, however, is unable to consider this evidence and therefore concludes that the United States is unable to prove, by a preponderance of the evidence, that Hampton commits child abuse.  The Court therefore denies the Petition for Revocation insofar as it relies on Hampton committing child abuse.

IT IS ORDERED that the Petition for Revocation of Supervised Release, filed November 26, 2025 (Doc. 98), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Ryan Ellison
  First Assistant United States Attorney
Jon K. Stanford
Samuel A. Hurtado
  Assistant United States Attorney
United State Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Margaret Katze
  Federal Public Defender
Daniel Benjamin Snyder
Stephen A. Taylor
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorneys for the Defendant*